UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MORE CUPCAKES, LLC, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | 09 C 3555 |
| LOVEMORE LLC, ANGELA B. CROSSMAN, and ANDREA R. CROSSMAN, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Defendants Lovemore LLC, Angela B. Crossman, and Andrea R. Crossman ("Defendants") have filed three motions that are now before the Court. Defendants filed a motion to dismiss claims against Defendants for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), a motion to dismiss the claims against Angela B. Crossman and Andrea R. Crossman ("the Crossman Defendants") for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), and a motion to transfer under 28 U.S.C. § 1404(a). For the reasons stated below, we deny both of Defendants' motions to dismiss and grant their motion to transfer.

## BACKGROUND

Plaintiff More Cupcakes, LLC ("More Cupcakes") is a limited liability company doing business in Illinois. More Cupcakes has an active bakery and makes over-the-

counter and catering sales of its products within this District. Defendant Lovemore, LLC ("Lovemore T-Shirts") is a domestic limited liability company of New York State doing the majority of its business within New York. The Crossman Defendants, sisters Angela B. and Andrea R. Crossman, are the founders, owners, and operators of Lovemore T-Shirts and personally direct Lovemore T-Shirts' business activities. Lovemore T-Shirts offers apparel with variations of the words "love more" upon it to locations throughout the United States, including Illinois, via its website at www.chooselovemore.com.

On May 15, 2008, More Cupcakes filed an application with the United States Patent and Trademark Office ("USPTO") to register a trademark for the words "love MORE" for use on t-shirts. Four days later, the Crossman Defendants filed a similar application to register "love more" for use on t-shirts. On September 4, 2008, the USPTO suspended the Crossman Defendants' application until it could decide on More Cupcakes' earlier application. The Crossman Defendants filed for an extension of time with the USPTO to oppose More Cupcakes' application in November 2008. While pursuing a resolution through the USPTO, the Crossman Defendants, More Cupcakes, and their respective counsel sought to resolve the case privately but were unsuccessful. After settlement discussions ended, the Crossman Defendants abandoned their

opposition to More Cupcakes' trademark through the USPTO. More Cupcakes received its registration for its trademark for the words "love MORE" on t-shirts on June 2, 2009.

Lovemore T-Shirts has continued to operate its website offering apparel with its "Lovemore" logo throughout this dispute. Lovemore T-Shirts, at the direction of the Crossman sisters, has also sold two separate orders of their t-shirts bearing the allegedly infringing "Lovemore" mark to customers in Illinois. Lovemore T-Shirts most recently sold and shipped their products to an Illinois resident two days after More Cupcakes registered its trademark with the USPTO. On June 9, More Cupcakes brought an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1 *et seq*. and analogous portions of Illinois law. Defendants' move to dismiss for lack of personal jurisdiction, to dismiss claims against the Crossman Defendants for failure to state a claim, and to transfer the case to the Eastern District of New York. We will now discuss each motion separately.

**LEGAL STANDARDS**

I. **Motion To Dismiss For Lack of Personal Jurisdiction**

Plaintiff has the burden of demonstrating the grounds for exercising personal jurisdiction over the defendant. *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). "When the district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an

evidentiary hearing . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The plaintiff's burden is not heavy - in deciding whether the plaintiff has satisfied the prima facie standard, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997).

For a district court's exercise of personal jurisdiction over a defendant to be proper in a federal question suit, the defendant must have "sufficient contacts with the United States as a whole" (i.e., either residency in, or doing business in any U.S. state) and must also be amenable to process. *See United States v. Martinez de Ortiz*, 910 F.2d 376, 381 (7th Cir. 1990) . Because Defendants are residents of New York and are engaged in business in New York, the "sufficient contacts with the United States as a whole" standard is easily met. To determine whether a defendant is amenable to process we look to Fed. R. Civ. P. 4(k)(1). Rule 4(k)(1) states that any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located" is amenable to process. Fed. R. Civ. P. 4(k)(1)(A). So we must look to Illinois law to see if the Defendants are amenable to process and can be subjected to the personal jurisdiction of this court.

The Illinois long-arm statute, 735 ILCS 5/2-209(c), grants its courts the power to exercise jurisdiction on any basis permitted by the due process clause of the Illinois and United States Constitutions. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 714 (7th Cir. 2002). Though the Illinois and federal due process requirements for personal jurisdiction "hypothetically may diverge in some cases . . . no case has yet emerged where due process was satisfied under the federal constitution but not under the Illinois constitution." *Citadel Group, Ltd. v. Wash. Reg'l. Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Because the parties have not asserted that the due process analysis would differ for federal and Illinois constitutional purposes, we will employ the federal analysis. Under this framework the amenability to process and due process inquiries collapse into each other - if Defendants can be subjected to personal jurisdiction in Illinois under the due process clause they are amenable to process and are subject to the personal jurisdiction of this Court.

Both parties agree that the Defendants are not subject to general personal jurisdiction, so our discussion will focus on whether Plaintiff has demonstrated that Defendants are subject to specific personal jurisdiction in Illinois courts. Specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997). Even the single act of a defendant can support an exercise

of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Before a court may exercise personal jurisdiction over a defendant under the due process clause of the Fourteenth Amendment, a plaintiff must first demonstrate (1) that the defendant purposefully availed itself of the privileges of doing business within the forum state; (2) that the claim asserted by the plaintiff arises out of or results from the defendant's forum-related activities; and (3) that the exercise of personal jurisdiction over defendant would comport with traditional notions of fair play and substantial justice. *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (citations omitted); *Euromarket Designs, Inc. v. Crate & Barrel, Ltd.*, 96 F. Supp. 2d 824, 834 (N.D. Ill. 2000). The parties do not address the "fair play and substantial justice" prong of the test, so we will confine our analysis to the first two requirements.

**II.     Motion To Dismiss for Failure To State A Claim For Which Relief May Be Granted**

Federal Rule of Civil Procedure 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To be cognizable, the factual allegations contained within a complaint must raise a claim for relief "above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). However, a pleading need only convey enough information to allow the defendant to understand the gravamen of the complaint. *Payton v. Rush-Presbyterian-St. Lukes Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). A claim should not be dismissed unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hefferman v. Bass*, 467 F.3d 596, 598 (7th Cir. 2006) (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)).

### III. Motion To Transfer Venue

A court may transfer a case to any other district where it might have been brought for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. § 1404(a). To obtain a transfer, a defendant must show that the "transferee forum is clearly more convenient" than the transferor forum. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (*citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217 (7th Cir. 1986)). To determine whether defendant has met this burden, courts examine whether (1) venue is proper in both in both the transferor and transferee courts; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interests of justice. *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001). Venue is proper in the Northern District of Illinois and the parties do not dispute the propriety of venue in the Eastern District of New York. We will

therefore limit our discussion to whether the convenience of the parties and witnesses and the interests of justice favor transfer.

## DISCUSSION

**I.  Motion To Dismiss For Lack of Personal Jurisdiction**

Plaintiffs contend that Defendants can be subjected to specific personal jurisdiction in Illinois because (1) Defendants' actions caused the Plaintiff harm in Illinois under the effects test; and (2) Defendants' sold their allegedly infringing products to Illinois customers through their website. Defendants also argue that the Crossman Defendants are exempt from personal jurisdiction of Illinois courts under the fiduciary shield doctrine.

*A.   The Effects Test*

Plaintiff argues that Defendants can be subject to the specific personal jurisdiction of this court based on the "effects test" first articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984) and applied to the trademark context by the Seventh Circuit in *Indianapolis Colts v. Metro. Balt. Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994). The effects test states that "personal jurisdiction over a nonresident defendant is proper when the defendant's intentional tortious actions expressly aimed at the forum state cause harm to the plaintiff in the forum state, and the defendant knows such harm is likely to be suffered." *Richter*, 594 F. Supp. 2d at 1010

(*citing Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000)). In most cases where personal jurisdiction is found based on the effects test, "the defendants expressly aimed their actions to cause harm in the forum state, thereby purposefully availing themselves of the privilege of conducting activities in the forum state." *Id.*

We hold that Defendant is subject to specific personal jurisdiction in Illinois based on the effects doctrine. Defendants were made aware of Plaintiff's rights in the "love MORE" trademark by the USPTO and by the Plaintiff during settlement discussions. Defendants then approved the sale and shipment of their alleged infringing t-shirts to Illinois, thus directing their actions toward Illinois and inflicting harm to the Plaintiff's trademark rights in Illinois with knowledge that their actions would cause such harm. Contrary to Defendants' suggestion, we need not decide that Defendant has committed an intentional infringement but we rather hold that Plaintiff has made a preliminary showing of Defendants' intent to justify the exercise of personal jurisdiction. Because Plaintiff's claim arises out of Defendants' alleged intentional tortious action, we hold that Defendants are subject to specific personal jurisdiction in Illinois based on the effects doctrine.

B.   *Defendants' Website*

Even though we have already found Defendants subject to specific personal jurisdiction under the effects test, we will still address whether Defendants' internet-

related activities are sufficient to subject them to personal jurisdiction. In evaluating whether a defendant's operation of a website is sufficient to subject it to personal jurisdiction in a given forum, district courts in the Seventh Circuit have employed the framework used in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123-24 (W.D.Pa. 1997). *See Richter v. Instar Enter. Int'l*, 594 F. Supp. 2d 1000, 1012-14 (N.D. Ill. 2009); *Nerds on Call, Inc. (Indiana) v. Nerds on Call, Inc. (California)*, 598 F. Supp. 2d 913, 921-22 (S.D. Ind. 2008). Under the *Zippo* analysis, courts look to the degree of interactivity of the defendant's website to determine if that defendant could be subject to specific personal jurisdiction in a given forum in a manner consistent with the Constitution. *Zippo*, 952 F. Supp. at 1123-24. The greater the interactivity of the site, the more likely that personal jurisdiction may be exercised. *Id*. "[W]hen an entity intentionally reaches beyond its boundaries to conduct business with foreign residents" through its website, "the exercise of specific jurisdiction is proper." *Id*. at 1124.

District courts in Illinois have not premised their exercise of personal jurisdiction based on a website's mere potential to do business but have rather required plaintiffs to show "evidence that defendant made any sales to Illinois through its interactive website." *Richter*, 594 F. Supp. 2d at 1013. In *Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824 (N.D. Ill. 2000), the court exercised specific personal jurisdiction over a website owner only upon a showing that defendant had made sales to customers in Illinois. Similarly, the court in *Richter* found no jurisdiction could be

exercised over a defendant despite its operation of an interactive website absent a showing of sales to Illinois consumers. *Richter*, 594 F. Supp. 2d at 1013. Defendants in this case have used their website to conduct business with Illinois customers on two occasions. Defendants thus purposefully availed themselves of doing business in Illinois by selling their t-shirts with the alleged infringing marks to Illinois consumers.

Defendants maintain that the fact that the most recent sale of their products was delivered to an employee of Plaintiff's counsel means that the sale should be discounted for purposes of this analysis. Plaintiff has shown that Defendants, both Lovemore LLC and the Crossman sisters personally, were aware of Plaintiff's trademark rights and nevertheless deliberately concluded a transaction with an Illinois customer. In approving the transaction and shipping the goods into Illinois, the Defendants engaged in sufficient purposeful conduct within Illinois to establish specific personal jurisdiction over them for purposes of the Plaintiff's Lanham Act and related state-law claims arising out of the transaction. We therefore find that Defendants are subject to specific personal jurisdiction based on the conclusion of sales with Illinois residents through their website.

### C. *The Fiduciary Shield Doctrine*

The Crossman Defendants argue that, even if we accept Plaintiff's justifications for the exercise of personal jurisdiction over Defendants, the fiduciary shield doctrine prohibits an exercise of jurisdiction over the Crossman Defendants individually because

they only entered Illinois representing their employer, Lovemore LLC. The Illinois Supreme Court established the fiduciary shield doctrine in *Rollins v. Ellwood*, 565 N.E.2d 1302 (Ill. 1990). In *Rollins*, the Illinois Supreme Court held that under the due process clause of the Illinois Constitution, Illinois courts lack personal jurisdiction over any "individual who seeks the protection and benefits of Illinois law, not to serve his [or her] personal interests, but to serve those of his employer or principal." *Id*. at 1318. Both federal and Illinois courts have construed this statement to mean that the fiduciary shield doctrine does not apply to persons with an ownership stake in the corporation who have the discretion to choose whether or not to do business in Illinois. *Brujis v. Shaw*, 876 F. Supp. 975, 978-80 (N.D. Ill. 1995); *Femal v. Square D. Co.*, 903 N.E.2d 32, 38 (Ill. App. Ct. 2009). As sole owners and operators of Lovemore, LLC, the Crossman Defendants engaged in business transactions in Illinois to serve their own personal interests and are therefore not entitled to the protection of the fiduciary shield doctrine.

### D. Conclusion

We therefore find that Defendants Lovemore, LLC, Angela B. Crossman, and Andrea R. Crossman are amenable to process and subject to specific personal jurisdiction of this Court. We therefore deny Defendants' motion to dismiss for lack of personal jurisdiction.

## II. Motion To Dismiss For Failure To State A Claim For Which Relief Can Be Granted

The Defendants ask us to dismiss the claims against the Crossman Defendants, Angela B. and Andrea R. Crossman, for failure to state a claim for which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Defendants argue that Plaintiff's claims against the Crossman Defendants should be dismissed because they fail to meet the pleading standard set forth by the Seventh Circuit in *Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1996). In *Dangler*, the Seventh Circuit held that officers of business entities are generally protected from liability for intellectual property infringement by their businesses. *Id*. at 947.[1] However, the Court of Appeals went on to note that "when the officer acts willingly and knowingly - that is, he [or she] personally participates in the manufacture or sale of the infringing article[,]" the officer could be subject to personal liability for the infringement activity. *Id*.

More Cupcakes has met the heightened burden of *Dangler* through the allegations of their complaint. More Cupcakes alleges that Defendant Lovemore LLC infringed More Cupcakes' mark by selling their infringing products to customers in

---

[1]*Dangler* involved officers of a corporation rather than managers of a limited liability company such as Lovemore. However, the court's emphasis on "the uncertainty surrounding the questions of validity and infringement" in shaping a rule to protect corporate officers would also apply with equal force to managers of an LLC. *Id*.

Illinois. More Cupcakes further alleges that Angela B. and Andrea R. Crossman personally direct the business activities of Lovemore LLC including the manufacture and sale of its allegedly infringing t-shirts. Taken together, these allegations meet the *Dangler* standard by establishing that the Crossman Defendants personally participated in the sale of the alleged infringing article. *Id*. More Cupcakes has pled sufficient facts that, if proven, would state a claim against the Crossman Defendants and therefore the Defendants' Rule 12(b)(6) motion is denied.

### III. Motion To Transfer Venue

Defendants have also filed a motion to transfer venue to the Eastern District of New York. When considering whether the convenience of the parties and witnesses favors transfer, courts assess the following five factors: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; (5) the convenience to the parties of litigating in the respective forums." *Sassy Inc. v. Berry*, 406 F. Supp. 2d 874, 876 (N.D. Ill. 2005).

An examination of the five convenience factors indicates that the convenience of the parties and witnesses favors transfer. More Cupcakes is an Illinois LLC doing business in Illinois. Though Illinois is More Cupcakes' home forum and its preferred venue for this action, deference for the Plaintiff's forum of choice is diminished when the forum of choice is not the situs of material events. *Id*. For trademark infringement cases brought under the Lanham Act, the "material events" are the alleged acts of

infringement. *See SRAM Corp. v. Sunrace Roots Enter. Co.*, 953 F. Supp. 257, 259 (N.D. Ill. 1997) ("intellectual property cases generally focus on the infringer's place of business"). The Plaintiff identifies the following activities as the basis for its trademark infringement claims against Defendants: the making, importation, sale, offering for sale, and use of LOVEMORE marks on t-shirts. One percent of Lovemore's sales of t-shirts were to customers in Illinois. The making and importation of the shirts occurred in unknown locations. The rest of the infringing activities occurred in New York. New York is therefore the site of the majority of the acts of infringement identified by the Plaintiff. Plaintiff must have access to documents and persons within the Eastern District of New York in order to support its allegations. The site of material events factor therefore strongly militates in favor of transfer.

The other factors are neutral with regard to the decision to transfer. Both parties would be able to access or transport the documentary sources of proof they need from either Illinois or New York. In this case, where the parties are most likely the only relevant witnesses as to whether and when an infringement occurred, the convenience of the witnesses and convenience of the parties prongs merge. Because each side's party-witnesses own or operate small businesses and would suffer an equal amount of hardship from litigating a case in a foreign jurisdiction, each side's difficulty cancels the other out. Given its proximity to the situs of the material events in this case, transfer

to the Eastern District of New York would best serve the convenience of the parties and witnesses.

Transfer is also in the interests of justice. "The interest of justice component embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Law Bulletin Publ'g Co. v. LRP Publ'ns*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998) (*citing TIG Ins. Co. v. Brightly Galvanized Prods., Inc.*, 911 F. Supp. 344 (N.D. Ill. 1996)). In deciding whether transfer is in the interests of justice, a court should consider "(1) the speed at which the case will proceed to trial; (2) the court's familiarity with applicable law; (3) the desirability of resolving controversies in each locale; and (4) the relationship of each community to the occurrence at issue." *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 946 (N.D. Ill. 2002). Neither party contends that one forum would conduct the trial with greater alacrity than the other or that one federal district court would be more familiar with federal trademark law. The third and fourth factors strongly favor transfer to the Eastern District of New York. Plaintiff's plea for injunctive relief prohibiting defendants from selling their allegedly infringing products in New York favors transfer to a New York court that could more easily monitor and enforce any such injunction. *See Int'l Truck & Engine Corp v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 905 (N.D. Ill. 2002); *Law Bulletin*, 911 F. Supp. at 1021. New York also has a relationship to the occurrence at issue as the site of the allegedly infringing conduct.

For the convenience of the parties, and in the interests of justice, we therefore grant the Defendants' motion and order the transfer of this action to the Eastern District of New York.

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) are denied. Defendants' motion to transfer to the Eastern District of New York under 28 U.S.C. § 1404(a) is granted.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   September 24, 2009